**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 0:21-cv-61006-RKA**

**RAYMOND PURCELL, et. al.,**
     **Plaintiffs,**

**vs.**

**CITY OF FORT LAUDERDALE, et. al.,**
     **Defendants.**

                                /

**PLAINTIFFS' RESPONSE AND MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' COMBINED MOTION FOR SUMMARY JUDGMENT**

Plaintiffs Raymond and Randall Purcell respond to Defendants City of Fort Lauderdale, Steven Pohorence, and Alexander Paul's Combined Motion for Summary Judgment (DE110).

## INTRODUCTION

Paul and Pohorence's concession that they lacked reasonable suspicion and probable cause of criminal conduct to initiate a seizure of Raymond Purcell is dispositive. Absent this, there was no legal basis for seizing Raymond, much less an exigent circumstance authorizing entry into his home to effectuate said seizure. The "officer safety" troupe is a red herring. Officer safety is not a recognized exception to the requirement of reasonable suspicion or probable cause to initiate a warrantless seizure. Putting all this aside, The Summary Judge Facts establish Raymond posed no threat to officer safety.

The City is liable because it has persistently failed to investigate and discipline officers who employ excessive force. When Raymond filed a complaint alleging Pohorence used excessive force against Randall, the City did not investigate or discipline Pohorence. In discovery, the City admitted its treatment of citizen complaints filed against Pohorence was in conformance with its policies, procedures, and practices. This Fed. R. Civ. P. 36 admission conclusively establishes a City policy. Moreover, City statistics as well as a review of sample cases where the City also failed to investigate and discipline officers who used excessive force, corroborate the admission. The defense summary judgment must be denied and Plaintiffs' motion for summary judgment granted.

## FACTS ESTABLISHING RAYMOND POSED NO THREAT TO OFFICER SAFETY

The Defendants concede the existence of factual disputes as to what transpired on April 7,

2014. Yet, when presenting their officer safety claim, they fail to present the facts in the light most favorable to the plaintiffs. Those facts follow and will be referenced throughout this response as "The Summary Judgment Facts":

Law enforcement made two visits to the Purcell home about the Purcell brothers' sister. During the first, Paul was overly aggressive. Paul snapped his fingers at Raymond and yelled for him to come out the house. Paul called him "boy," to which Raymond responded "I'm not your boy, I'm not your son and I damn sure ain't your dog. It seems to me you have anger management issues." (DE108-9, Raymond Dep. at 95). Raymond told Paul to leave (DE108-9, Raymond Dep. 95-96:24-3). Raymond closed the door, leaving Paul shocked (DE108-9, Raymond Dep. 97:2).

Eventually, Paul and Pohorence were invited inside the home, where they saw a collection of decorative Star Trek Klingon memorabilia displayed above a doorway and not readily accessible. (DE108-12, Paul Dep. 62:19-63:7). When asked, Raymond disclosed he had **one** pistol, which was located outside the house in a car (DE108-6, Purcell IA Compl. 22:444-445). Law enforcement knew that Raymond had a concealed firearms permit (*Id*. at 73:1497-1502).

Later that day, Raymond's sister caused a total of $5,000 in damages to two vehicles when she keyed them and poked holes in one car's convertible top. (*Id*. at 39:786-788; DE108-9, Raymond Dep. 105:12-13, 106:15-107:25). The police were called again. (*Id*. at 117:17-19). Paul and Pohorence responded, but their tone showed they did not want to be there (DE108-10, Randall Dep. 75:7-11). They refused to fill out the required police report, spuriously claiming the criminal mischief was under $1,000 and therefore a misdemeanor. (DE108-9, Raymond Dep. 212:3-25). Raymond told them several times to leave (DE108-10 Randall Dep. at 76:4-15, 78:13-20). Raymond said he would file a police report on his own (DE108-9, Raymond Dep. 132; DE108-10, Randall Dep. 76:4-15, 84:23-25).

Raymond walked toward the door to go inside and tossed his flashlight onto a file cabinet (DE108-9, Raymond Dep. 137). Pohorence and Paul then walked into the garage and tried to handcuff Raymond. (DE108-11, Pohorence Dep. 93:3-4; DE108-6, Purcell IA Compl. 60: 1219-1221). They entered the garage without a warrant, consent, or in fresh pursuit (DE108-7, Pohorence Dep. Crim. 17:18-18:14). They were not executing a warrant, conducting a traffic stop, or detaining another person at the time of the seizure (DE108-11, Pohorence Dep. 42:1-6).

2

Raymond never threatened anyone or the officers. (*Id*. at 90:23-91:4; DE108-9, Raymond Dep. 137:14-22; DE108-6, Purcell IA Compl. at 72:1481-1483). The officers did not receive any information indicating Raymond's lawful pistol was moved from the car. (*Id*. at 77:1580-1583; DE108-9, Raymond Dep. 121:1-125:3, 126:10-134:25). Nor did they receive any information indicating Raymond brought out a ladder and took down his Star Trek memorabilia from the wall.

When seized, Raymond was walking ***away*** from his car, the last reported location of his lawful gun. (DE108-10, Randall Dep. 85:11-14; DE108-6, Purcell IA Compl. 22:444-445). Raymond was not running or sprinting to his home (DE108-11, Pohorence Dep. 52:17-24). Nor did Paul and Pohorence sprint or run after Raymond to seize him (*Id*. at 53:21-54:1). The distance from the driveway to the garage was approximately ten feet (*Id*. at 97:2-98:4). It took the officers approximately 5 seconds to walk to Raymond to detain him. (*Id*. at 93:21-23). During the 5-second walk, no effort was made to verbally instruct him. No one told Raymond, "Freeze," "Don't make another move," or "Stop." (DE108-12, Paul Dep. 117:22-118:14).

Law enforcement did not act on reasonable suspicion to believe Raymond had committed, was committing, or was about to commit a crime (DE108-7, Pohorence Dep. Crim. 16:23-17:9). They did not believe there was probable cause to arrest Raymond Purcell (*Id*. at 17:10-12). Nor did they see Raymond armed with a gun. (DE108-12, Paul Dep. 145:22-25). Law enforcement knew that turning a consensual encounter into a detention required they have reasonable suspicion (*Id*. at 102:4-9). Law enforcement knew that during a consensual encounter, they were not permitted to detain a person for officer safety (*Id*. at 101:14-17, 107:10-17).

### MEMORANDUM OF LAW – FORMER OFFICER POHORENCE AND OFFICER PAUL

I.   **The defendants are not entitled to summary judgment on the warrantless entry claim (Count I), where Raymond posed no threat to officer safety.**

Under the Fourth Amendment, the home is a sacrosanct place that enjoys special protection from government intrusion. *Moore v. Pederson*, 806 F.3d 1036, 1039 (11th Cir. 2015). The "very core" of the Fourth Amendment is "the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion." *Silverman v. United States*, 365 U.S. 505, 511 (1961); *see also Florida v. Jardines*, 569 U.S. 1, 6 (2013) ("the home is first among equals."). The

3

Fourth Amendment draws "a firm line at the entrance to the house." *Payton v. New York*, 445 U.S. 573 (1980). "Under settled Fourth Amendment jurisprudence, a warrantless search or seizure inside a home is presumptively unreasonable." *United States v. McGregor*, 31 F.3d 1067, 1071 (11th Cir. 1994) (citing *Payton*, 445 U.S. at 586).

Paul and Pohorence seek summary judgment on grounds that exigent circumstances justified the warrantless entry into Raymond Purcell's garage to seize Raymond (DE110:9-10). The motion must be denied for two reasons. First, "[a]s *Payton* makes plain, police officers need either a warrant, or probable cause ***plus*** exigent circumstances, in order to make a lawful entry into a home." *Bashir v. Rockdale Cty.*, 445 F.3d 1323, 1328 (11th Cir. 2006) (quoting *Kirk v. Louisiana*, 536 U.S. 635, 638 (2002) (emphasis added)). The motion presents no lawful ground for summary judgment, given the absence of argument establishing that probable cause or reasonable suspicion supported the entry into the Purcell home to effectuate a warrantless seizure. Second, the Summary Judgement Facts establish Raymond did not pose a threat to officer safety.

### A. Did Paul and Pohorence need probable cause or reasonable suspicion to enter the Purcell home without a warrant? Yes.

On April 6, 2017, the law was clearly established that Paul and Pohorence needed probable cause of criminal conduct **plus** exigent circumstances to enter Raymond's garage to effectuate a warrantless seizure. In *Moore v. Pederson*, 806 F.3d 1036, 1046 (11th Cir. 2015), the Eleventh Circuit reaffirmed this clear precedent in noting: "We have said that an officer may not enter the home for the purpose of effecting a warrantless arrest unless that officer has both probable cause and either exigent circumstances or consent." In 2005, the Court in *Lepone-Dempsey v. Carroll Cty. Comm'rs*, 159 F. App'x 916, 919 (11th Cir. 2005), explained that "it was clearly established that, absent consent or exigent circumstances, a law enforcement officer could not make a warrantless entry into a suspect's home in order to make a routine felony arrest."

The *Moore* decision also clearly established that investigatory detentions inside a home require reasonable suspicion **plus** exigent circumstances. *Hardigree v. Lofton*, 992 F.3d 1216, 1231 n.6 (11th Cir. 2021) ("The Eleventh Circuit allows for *Terry* stops in the home when there is reasonable suspicion **and** exigent circumstances.") (citing *Moore*, 806 F.3d at 1046 (emphasis added)); *Davis v. State*, 744 So. 2d 586, 588 (Fla. 2d DCA 1999) (investigatory detention, though

supported by reasonable suspicion, also required a warrant, consent, or exigency where person was detained inside his home). *See also United States v. Saari*, 272 F.3d 804, 809 (6th Cir. 2001) ("like a full-blown arrest, an investigatory detention is a seizure that is subject to Fourth Amendment scrutiny. Thus, *Payton's* holding that warrantless seizures of persons in their homes violate the Fourth Amendment, absent exigent circumstances, applies to this case regardless of whether the officers at issue were conducting an arrest or an investigatory detention.").

The officers do not contend that probable cause, or reasonable suspicion, supported the handcuffing of Raymond.[1] (DE110:7-10). The motion is thus fatally incomplete. Without probable cause supporting a warrantless seizure, whether an exigency justified the warrantless entry to effectuate said seizure is beside the point. *State v. McHenry*, 272 Ore. App. 148, 151, 354 P.3d 750, 752 (2015) ("We need not consider whether exigent circumstances existed, because we agree with defendant that Lorentz lacked an objectively reasonable belief that the crime of furnishing alcohol to minors had more likely than not been committed.").

This critical fact separates this case from the case law cited in defendants' motion. To be sure, in *State v. McRae*, 194 So. 3d 524, 529 (Fla. 1st DCA 2016), the First District's analysis first decided if there was probable cause to arrest the defendant. It found probable cause: "Once McRae answered the door and Lt. Daffin recognized her as the robber, police had probable cause for her arrest without a warrant." *Id.* Likewise, in *Bethel v. State*, 93 So. 3d 410, 413 (Fla. 4th DCA 2012), the Fourth District "conclude[d] that the officer had probable cause to believe that the defendant committed the crime of open carrying of a weapon." Finally, in *Velasquez v. Audirsch*, 574 F. App'x 476, 477 (5th Cir. 2014), probable cause to arrest was a non-issue, because plaintiff committed the crime of aggravated assault with a deadly weapon after he threatened a neighbor with a knife and then ran inside his home. Law enforcement responded to the 911 call placed by the victim neighbor. In *United States v. Shannon*, 21 F.3d 77, 81 (5th Cir. 1994), the Fifth Circuit

---

[1] The defendant officers rightfully do not claim there was probable cause or reasonable suspicion. For the past five years, the defendants have consistently conceded an absence of probable cause or reasonable suspicion to believe Raymond was committing a crime, had committed a crime, or was about to commit a crime (DE108-7, Pohorence Dep. Crim. 16:23-25, 17:1-12; DE108-12, Paul Dep. 66:17-21, 67:3-12, 96:23-4, 97:7-23; DE108-8, Paul Dep. Crim. 17:21-24).

determined there was probable cause to arrest the defendant for armed bank robbery.

*Ryburn v. Huff*, 565 U.S. 469, 475 (2012), is miscited. Defendants concede *Ryburn* did not address the necessity of probable cause or reasonable suspicion (DE110:9). Indeed, there was no need to address the issue, because law enforcement never seized or searched a person, place, or thing. *Ryburn*, 565 U.S. at 472. In *Ryburn*, two months after the Virginia Tech shooting, law enforcement responded to a tip that a high school student wrote a letter threatening to shoot up his school. *Huff v. City of Burbank*, 632 F. 3d 539, 541 (9th Cir. 2011). The rumor caused parents to keep their children home while the principal was "concern[ed] for the safety of her students and requested that the officers investigate the threat." *Ryburn*, 565 U.S. at 470. While speaking to the mother outside the home, they asked her if there were any guns inside the house. *Id*. at 471. She immediately turned around and ran into the house. *Id*. Law enforcement followed behind her, fearing what was inside the house. *Id*. **Upon entering the home, law enforcement stayed in the living room with the mother and the son. "They did not conduct any search of Mr. Huff, Mrs. Huff, or Vincent, or any of their property."** *Id***. at 472.**

The facts here are a far cry from that case. First, The Summary Judgment Facts establish Raymond was no target of a legitimate investigation into a potential mass shooting or other terroristic plot. Second, Paul and Pohorence entered the home to effectuate a warrantless seizure. As the Florida Supreme Court explained in *Hornblower v. State*, 351 So. 2d 716, 718 (Fla. 1977), "the 'emergency exception' permits police to enter and investigate private premises to preserve life, property, or render first aid, **provided they do not enter with an accompanying intent either to arrest or search**." (emphasis added). *Ryburn* creates no exception to the requirement of probable cause or reasonable suspicion before entering a home to effectuate a warrantless seizure.

**B.      Was there probable cause of an exigent circumstance? No.**

Paul and Pohorence's motion must also be denied because The Summary Judgment Facts show there was no exigency. "Any warrantless entry based on exigent circumstances must, of course, be supported by a genuine exigency." *Kentucky v. King*, 563 U.S. 452, 470, 131 S. Ct. 1849, 1862 (2011). Mere speculation that a sting operation may get out of control and put lives of officers in danger is not sufficient exigent circumstance to justify warrantless entry into a home. *Lee v. State*, 856 So. 2d 1133, 1137 (Fla. 1st DCA 2003) (no exigent circumstances). The officers

contend there was a likelihood that delay could jeopardize the safety of officers or the public (DE110:9-10). First, their argument relies on disputed facts, which are bolded (DE110:10):

> [T]he situation was escalating based on Raymond's other words and actions and **readily accessible weapons**, and the Officers made a split-second determination that it was necessary to detain Raymond for the Officers' safety as well as Raymond's. Under the totality of the circumstances, the Officers could have reasonably believed that **Raymond was going inside the home to retrieve his gun**, a deadly weapon.

The existence of "readily accessible weapons" as well as their claim that there was a reasonable belief that Raymond was about to "retrieve his gun" from inside his home are disputed facts. Raymond told Paul and Pohorence that he had but **one** pistol, which was inside his car (DE108-6, Purcell IA Compl. at 22:444-445). The collection of Star Trek Klingon memorabilia Paul and Pohorence saw on the wall was displayed above a doorway and not readily accessible. (DE108-12, Paul Dep. 62:19-63:7). *See Appendix*. Aside from this, The Summary Judgment Facts establish Raymond posed no threat to officer safety.

## II. The defendants are not entitled to summary judgment on Count II (illegal seizure), because Raymond posed no threat to officer safety.

Raymond Purcell was arrested for resisting his detention without violence and released on the scene with a Notice to Appear ((DE108-4, Notice to Appear Raymond Purcell at 1-2). The notice to appear claims Raymond resisted Paul without violence by pulling away multiple times as Paul attempted to grab Purcell's arms and put them behind his back (DE108-4, Notice to Appear Raymond Purcell at 1). After being taken to the ground, Raymond Purcell allegedly continued to bring his arms toward the center of his body in order to prevent Paul from handcuffing him (*Id*. at 1-2). This is the extent of the resistance alleged by law enforcement. Paul concedes in deposition that Raymond never offered any violence during the purported resistance (DE108-12, Paul Dep. 87:24-88:4, 89:23-90:1). Count II alleges Raymond was seized without reasonable suspicion and arguable probable cause.

Section 843.02 provides, in pertinent part: "Whoever shall resist, obstruct, or oppose any officer . . . in the execution of legal process or in the lawful execution of any legal duty, without offering or doing violence to the person of the officer, shall be guilty of a misdemeanor . . .." Fla. Stat. § 843.02 (2017). To support a conviction under § 843.02, the state must show: (1) the officer

was engaged in the lawful execution of a legal duty; and (2) the action by the defendant constituted obstruction or resistance of that lawful duty. *See H.A.P. v. State*, 834 So. 2d 237, 239 (Fla. 3d DCA 2002); *V.L. v. State*, 790 So. 2d 1140, 1142 (Fla. 1st DCA 2001); *Jay v. State*, 731 So. 2d 774, 775 (Fla. 4th DCA 1999); *S.G.K. v. State*, 657 So. 2d 1246, 1247 (Fla. 1st DCA 1995).

On the question of whether an officer was performing a legal duty for purposes of a conviction under § 843.02, "'it is important to distinguish between a police officer in the lawful execution of any legal duty and a police officer who is merely on the job.'" *Jay*, 731 So. 2d at 775 (internal citation omitted) (quoting *D.G. v. State*, 661 So. 2d 75, 76 (Fla. 2d DCA 1995)). "Job functions that qualify as falling within the ambit of 'the lawful execution of any legal duty' under Florida law include an officer's (1) serving process, (2) **legally detaining a person**, and (3) asking a person for assistance with an ongoing emergency." *Storck v. City of Coral Springs*, 354 F. 3d 1307, 1315 (11th Cir. 2003) (citing *Jay*, 731 So. 2d at 775) (emphasis added).

### A.    Were Paul and Pohorence making a legal detention? No.

Paul and Pohorence claimed they tried to detain Raymond for officer safety and that they did not need probable cause or reasonable suspicion to do so. (DE110:10-12). The argument is legally erroneous and does not take into account The Summary Judgment Facts.

#### 1.    Paul and Pohorence rely on disputed facts.

At the outset, the defendants' summary judgment argument relies on disputed facts that are bolded (DE110:11) (emphasis added):

> Similarly, here, it was reasonable under the totality of the circumstances for the Officers to detain Raymond for the "weighty" reason of officer safety, particularly in light of Raymond's expressed anger and the **Officers' understanding that Raymond had weapons, including firearms, in his house**.

Whether Raymond had weapons, including firearms, is a disputed fact. Raymond told Paul and Pohorence that he had **one** pistol and that it was inside his car (DE108-6, Purcell IA Compl. at 22:444-445). The Star Trek memorabilia was affixed to the wall (above a doorway) and not readily accessible. (DE108-12, Paul Dep. 62:19-63:7). Also, as The Summary Judgment Facts establish, Raymond posed no risk to officer safety.

#### 2.    Law enforcement further lacked reasonable suspicion of criminal conduct to convert Raymond's consensual encounter into a

***detention by handcuffing.***

Summary judgment must be denied for a second reason. Raymond was the victim of a crime engaged in a consensual encounter with police. The attempted handcuffing converted the consensual encounter into a detention, which required reasonable suspicion of criminal conduct.

The three levels of police-citizen encounters are well established in both federal and Florida state law. *United States v. Oden*, 786 F. App'x 961, 962 (11th Cir. 2019) (discussing the three levels); *Popple v. State*, 626 So. 2d 185, 186 (Fla. 1993) (same). They are: "(1) police-citizen exchanges involving no coercion or detention; (2) brief seizures or investigatory detentions; and (3) full-scale arrests." *United States v. Hastamorir*, 881 F. 2d 1551, 1556 (11th Cir. 1989).

A consensual encounter—the first level—involves only minimal police contact. *Popple*, 626 So. 2d at 186. During a consensual encounter, a citizen may either voluntarily comply with a police officer's requests or choose to ignore them. *Id*. Because the citizen is free to leave during a consensual encounter, constitutional safeguards are not invoked. *Id*. (citing (*United States v. Mendenhall*, 446 U.S. 544, 100 S. Ct. 1870, 64 L. Ed. 2d 497 (1980)). However, when a police officer "by means of physical force or show of authority . . . has in some way restrained the liberty of a citizen," a seizure has occurred. *Terry v. Ohio*, 392 U.S. 1, 19 n.16. (1968).

Paul and Pohorence do not dispute that they initiated a Fourth Amendment seizure of Raymond Purcell when, by means of physical force, an attempt was made to place Raymond Purcell in handcuffs after he tossed his flashlight inside his garage. *United States v. Lara-Mondragon,* 516 F. App'x 771, 773 (11th Cir. 2013) ("encounter undisputedly ceased to be a consensual 'knock and talk' when the citizen was handcuffed"); *United States v. Brown,* No. 1:17-CR-142-ELR-LTW, 2018 U.S. Dist. LEXIS 97602, at *47-50 (N.D. Ga. May 10, 2018) ("the seizure did not occur until Officer Crowder intercepted Defendant after he had fled and placed him in handcuffs because that was the first point in which his liberty was restrained"); B*arfield v. Rambosk*, No. 2:13-cv-566-FtM-29DNF, 2015 U.S. Dist. LEXIS 50936, at *14 (M.D. Fla. Apr. 17, 2015) ("It is clear that the use of handcuffs results in a 'seizure' of an individual, since a 'seizure' under the Fourth Amendment occurs when a government actor, by means of physical force or show of authority, in some way restrains the liberty of a citizen.").

This second level of police-citizen encounter—the temporary *Terry* investigatory stop—is

9

authorized if "(1) the officers have a reasonable suspicion that the suspect was involved in, or is about to be involved in, criminal activity, and (2) the stop 'was reasonably related in scope to the circumstances which justified the interference in the first place.'" *United States v. Jordan*, 635 F. 3d 1181, 1186 (11th Cir. 2011) (quoting *Terry*, 392 U.S. at 19-20, 30). To avoid a Fourth Amendment violation, the investigatory stop must be supported by a well-founded, articulable suspicion of criminal activity. Mere suspicion or a hunch is not enough. *United States v. Heard*, 725 F. App'x 743, 750 (11th Cir. 2018); *Carter v. State*, 454 So. 2d 739 (Fla. 2d DCA 1984). "So long as the officer is entitled to make a forcible stop, and has reason to believe that the suspect is armed and dangerous, he may conduct a weapons search limited in scope to this protective purpose." *Adams v. Williams*, 407 U.S. 143, 146, 92 S. Ct. 1921, 1923 (1972).

During an investigatory detention, law enforcement may also place the suspect in handcuffs for officer safety without converting the *Terry* stop into a full-blown arrest requiring probable cause. *United States v. Hastamorir*, 881 F. 2d 1551, 1557 (11th Cir. 1989) ("The handcuffing of Hastamorir constituted a *Terry* stop, and was a reasonable action designed to provide for the safety of the agents.").[2]

The third level of police-citizen encounters involves a full-blown arrest, which must be supported by probable cause that a crime has been or is being committed. *Henry v. United States*, 361 U.S. 98 (1959).

Importantly, the summary judgment record establishes that Paul understood these black letter legal principles. Officer Paul readily admitted in deposition his knowledge that reasonable suspicion was required to elevate a consensual encounter into an investigatory detention (DE108-

---

[2] *United States v. Kapperman*, 764 F.2d 786, 790 n.4 (11th Cir. 1985) ("neither handcuffing nor other restraints will automatically convert a *Terry* stop into a *de facto* arrest requiring probable cause"); *United States v. Hogan*, 684 F. App'x 904, 908 (11th Cir. 2017) (during *Terry* stop supported by reasonable suspicion, law enforcement "acted reasonably in requiring [defendant] to exit the car, handcuffing him, and conducting a pat-down for weapons;" where law enforcement "had a reasonable concern for his safety during the stop, because the [BOLO] notification stated Hogan should be considered armed and dangerous"); *United States v. Foster*, No. 2:18cr111-WKW-SRW, 2018 U.S. Dist. LEXIS 157240, at *22 (M.D. Ala. July 13, 2018) ("It is well settled within this Circuit that during a *Terry* stop, an officer may detain a suspect if there is a concern for officer safety, and handcuffs are permissible.").

12, Paul Dep. 102:4-10): Paul was asked: "What do you need in order to convert a consensual encounter to a detention?" He responded: "I would need some kind of tangible evidence that a crime has occurred, about to occur, anything like that, or a call or something like that, at that point." Officer Paul similarly admitted his knowledge that during a consensual encounter, he could not detain someone for officer safety (DE108-12, Paul Dep. 101:14-17): "So, you understand that during a consensual encounter you can't detain someone for officer safety?" He responded, without equivocation: "Yes."

Thus, by Paul's own testimony, there could be no Fourth Amendment detention for officer safety in the absence of an investigatory detention supported by reasonable suspicion.

Notwithstanding these admissions, Paul and Pohorence contend "it is immaterial whether the Officers had probable cause or reasonable suspicion to believe that Raymond had committed, was in the process of committing, or was about to commit, a crime" when he attempted to handcuff Raymond (DE110:11). The argument is fundamentally flawed and does not flow from any fair reading of Fourth Amendment case law, much less the case law they cite. There is no officer safety exception to the requirement of reasonable suspicion to initiate a warrantless detention.

Paul and Pohorence first cite *Croom v. Balkwill*, 672 F. Supp. 2d 1280, 1294 (M.D. Fla. 2009), for the proposition that "a police officer performing his lawful duties may direct and control—to some extent—the movements and location of persons nearby, even persons that the officer may have no reason to suspect of wrongdoing." (DE110:10-11). But in *Croom*, law enforcement was executing a search warrant when they detained the plaintiff, who was present inside the residence, which law enforcement can legally do. Since *Michigan v. Summers*, 452 U.S. 692, 705 (1981), the law has been that "a warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted." *United States v. Mastin*, 972 F.3d 1230, 1237 (11th Cir. 2020) ("Detaining third parties during the execution of a search warrant is reasonable because of the potential risk if bystanders could not be detained.").

Here, Pohorence and Paul were not executing a search warrant when they arrested Raymond (DE108-11, Pohorence Dep. 42:1-6). It was a consensual encounter (DE108-11, Pohorence Dep. 40:18-25). *Croom* is also inapposite because, unlike here, the plaintiff in *Croom*

was not handcuffed while law enforcement executed the warrant. 672 F. Supp. 2d at 1295.

Paul and Pohorence also cite *Hudson v. Hall*, 231 F.3d 1289, 1296 (11th Cir. 2000), which is also adverse, because there, law enforcement was conducting a lawful traffic stop. The law is clearly settled that during a lawful traffic stop, officers may take steps that are reasonably necessary to protect their personal safety, including handcuffing the detainee if officers reasonably believe there is a threat to their safety. *United States v. Hastamorir*, 881 F.2d 1551, 1557 (11th Cir. 1989). There is no contention here that Pohorence and Paul were conducting a lawful traffic stop (DE108-11, Pohorence Dep. 42:1-6).

*United States v. Lewis*, 674 F.3d 1298, 1304-05 (11th Cir. 2012), is also misstated. In *Lewis*, law enforcement elevated a consensual encounter with four individuals to a detention, after developing reasonable suspicion that one of the four was unlawfully carrying a concealed firearm. The Eleventh Circuit reasoned that law enforcement was allowed "to control the movements of nearby associates and exercise command over the situation once the officers had reasonable suspicion of criminal activity that warranted further investigation." *Id*. at 1308. "Once the officers had that reasonable suspicion, they were not obliged to let three of the four associated individuals walk about freely while they investigated McRae, in light of the officers' powerful concern for their own safety." *Id*. Furthermore, the seizure was not initiated by handcuffs. They were handcuffed only after a semi-automatic pistol was found in their vicinity during the detention.

Here, in contrast, Raymond Purcell was not associated with anyone being lawfully detained by Pohorence and Paul (DE108-11, Pohorence Dep. 42:1-6). Nor has any officer claimed they believed Raymond was unlawfully carrying a firearm.

Finally, *United States v. Arbery*, 591 F. App'x 749, 750 (11th Cir. 2014), is similarly inapplicable. There, law enforcement was executing an arrest warrant for aggravated assault in a high crime area when they detained and frisked the defendant, who was in the vicinity of the person being arrest. The Eleventh Circuit reasoned, in part, "Under these circumstances, it was reasonable for Officer Melendez to briefly assert control over Arbery [defendant], whom he believed was one of Williams' [the target of the warrant] associates, for safety reasons by ordering Arbery to lay down on the ground and then frisking him for weapons on the outside of his pants." *Id*. at 752. Defendant Arbery was handcuffed only after law enforcement felt the barrel of the gun. *Id*.

Again, here, Pohorence and Paul were not executing an arrest warrant, when Raymond was in the vicinity (DE108-11, Pohorence Dep. 42:1-6). Nor was Raymond handcuffed after law enforcement found a firearm on his person. They started with handcuffing Raymond.

Paul and Pohorence's officer safety argument is rebutted by The Summary Judgment Facts, and no fair reading of Fourth Amendment jurisprudence supports an officer safety exception to the probable cause or reasonable suspicion requirement for initiating a warrantless seizure.[3]

### B. Did Raymond violently resist the attempted seizure? No.

There is no disputed issue of fact that Raymond nonviolently resisted the attempted seizure. Because the arrest and detention were unlawful, Raymond could nonviolently resist.

### C. Under these facts, was there *arguable* probable cause to arrest Raymond for resisting without violence? No.

Contrary to Paul and Pohorence's summary judgment argument, the law was clearly established in 2017 that Raymond Purcell's nonviolent resistance of his illegal detention was not a crime. *See Lozman v. City of Riviera Beach*, 39 F. Supp. 3d 1392, 1410 (S.D. Fla. 2014) ("every person has the right to resist, without violence, an unlawful arrest").

*Windsor v. Eaves*, 614 F. App'x 406, 410-11 (11th Cir. 2015), is directly on point:

> Windsor's resistance occurred when the deputies removed him from the vehicle, forced him to the ground, and handcuffed him. They were not lawfully executing a legal duty then because they were not lawfully detaining Windsor. So they had no arguable probable cause to believe that he was engaged in "obstruction or resistance of [a] lawful duty" in violation of § 843.02. *Storck*, 354 F.3d at 1315 (emphasis added). Because no reasonable officer in the deputies' circumstances and possessing their knowledge could have believed otherwise, the district court correctly denied their motion for summary judgment. *Skop*, 485 F.3d at 1137.

The District Judge in *United States v. Hayes*, No. 1:15-CR-125-LMM-AJB, 2016 U.S. Dist. LEXIS 149020, at *25-26 (N.D. Ga. Oct. 6, 2016), came to a similar conclusion in the context of a motion to suppress:

> That Hayes subsequently obstructed the officers trying to handcuff him is of no moment, because he could lawfully resist an unlawful arrest, *Merenda v. Tabor*,

---

[3] Pohorence and Paul do not contend in their motion that the attempted seizure by handcuffs was supported by probable cause or reasonable suspicion of criminal activity by Raymond Purcell. The issue is accordingly not before the Court and the Plaintiffs do not address the issue.

506 Fed. Appx. 862, 867 (11th Cir. Feb. 1, 2013) (citations to Georgia cases omitted); *Gainor v. Douglas County*, Ga., 59 F. Supp. 2d 1259, 1281 n.23 (N.D. Ga. 1998) (Carnes, J.) (citing cases), and the detention was not warranted because it was not supported by reasonable suspicion.

*Windsor*, *Hayes*, and similar cases applied here clearly establish the constitutional offense. The initial seizure was unlawful; and consequently, there was no arguable probable cause to arrest Raymond Purcell for resisting his detention without violence.[4]

### III.   Pohorence is not entitled to summary judgment on Raymond's excessive force (Count III) and battery (Count IV) claims, where Randall saw the force Pohorence used against Raymond.

Pohorence seeks summary judgment on grounds that "Raymond testified that he does not know if he is claiming Officer Pohorence used excessive force against him and could not offer any testimony regarding anything Officer Pohorence did to him or whether he was suing Officer Pohorence for excessive force." (DE110:12). The argument is a nonstarter. Pohorence admits participating in the seizure (DE108-7, Pohorence Dep. 18:2-19:20). Also, Randall Purcell provided vivid details of Pohorence's involvement in the seizure, recounting how Pohorence held Raymond's shoulder, twisting and yanking it upward in a way Randall did not know a body could be twisted. (DE108-10, Randall Dep. 95:1-7).

### IV.   The defendants are not entitled to summary judgment on the false arrest/imprisonment claim (Count V).

Count V of the complaint presents a common-law false arrest claim, which is not subject to qualified immunity. "Probable cause is an affirmative defense to a false arrest claim, for which the officers bear the burden. *Mailly v. Jenne*, 867 So. 2d 1250, 1251 (Fla. 4th DCA 2004). Paul and Pohorence contend there was probable cause to arrest Raymond and Randall for resisting without violence (DE110:14-16), because "the Officers were in the process of lawfully executing a legal duty as they were **legally detaining Raymond for the safety** of the Officers (and Raymond) at the time Raymond initially and later Randall obstructed and resisted the Officers' attempts to detain Raymond." (DE110:14) (emphasis added). They have not their burden. They

---

[4] Defendant officers do not address the seizure of Randall and do not seek summary judgment on Count II as to Randall Purcell. The issue is accordingly not addressed.

have produced no factually-analogous case remotely supporting their position. Furthermore, as the Summary Judgment Facts show, the officers were not legally detaining Raymond. They lacked reasonable suspicion and probable cause. Thus, Raymond and Randall's nonviolent resistance was not criminal. *Robbins*, 613 So. 2d at 581; *Windsor*, 614 F. App'x at 410-11. *See* Section II.C.

Notwithstanding, the Summary Judgment Facts show the detention was unlwaful. *See* Section I.C, II.A.1. Likewise, the contention that Randall interfered with the arrest by running towards Officer Pohorence "in an aggressive manner" misstates the summary judgment facts (DE110:16). As their motion concedes (DE110:15), Randall explained that he walked over, stopped a few feet from the officers, and informed the officers they were hurting Raymond and that their conduct was unnecessary (DE110:15-16).

**V.      Summary Judgment on Randall Purcell's false imprisonment claim.**

The Summary Judgment Evidence establishes Randall Purcell was falsely imprisoned for resisting with and without violence. Paul and Pohorence did not learn of the arrest warrant issued by another state until way after the arrest. Therefore, Randall was falsely imprisoned up until discovery of the arrest warrant. *Jacobs v. Bonser*, 46 S.W.3d 41, 48 (Mo. Ct. App. 2001) (affirming false imprisonment claim against accuser, where outstanding warrant not discovered until after plaintiff was jailed).

**VI.     Malicious Prosecution Claim.**

Defendants finally seek summary judgment on the malicious prosecution claim, on grounds there was probable cause for the criminal proceeding (DE110:18-19). As already discussed, the law and the Summary Judgment Facts show there was no probable cause to arrest Raymond for resisting without violence. *See* Section II & IV.

Regarding Randall Purcell, defendants contend that because he had an outstanding warrant in Kentucky at the time of his arrest, there was probable cause to arrest him (DE110:19). The argument is misdirected because the basis for the underlying criminal proceeding was Randall's alleged violent interference and obstruction of Raymond's arrest, not resisting execution of an arrest warrant (DE108-5, Randall Purcell's Arrest Affidavit). He stayed in prison for more than one hundred days because of that allegation. Defendants further contend there was probable cause to initiate a proceeding for resisting without violence. The Summary Judgment Facts show

otherwise.  Because they lacked reasonable suspicion and/or probable cause to handcuff Raymond where Raymond posed no threat to officer safety, the attempted seizure was illegal and Randall could not be arrested for nonviolently resisting his brother's illegal seizure. *See* Section II & IV. Raymond and Randall Purcell only offered non-violent resistance to law enforcement's warrantless entry into their home and warrantless arrest. (DE108-10, Randall Dep. 93:25-94:5; DE108-12, Paul Dep. 87:24-88:4, 89:23-90:1).

**MEMORANDUM OF LAW – CITY OF FORT LAUDERDALE**

I.      **The City has failed to meet its burden of establishing the absence of an official or *de facto* custom, policy, or practice.**

A.      **Motion to Strike Major Vincent's Expert Opinions.**

As an initial matter, the defendants' concise statement of material facts (DE109, ¶¶ 49, 51) rely on an affidavit from Major London that is rife with expert opinions that were not disclosed before the discovery deadline and which the Plaintiffs were never given an opportunity to test during discovery. Expert witness discovery rules are designed to allow both sides to prepare their cases adequately and to prevent surprise. *See Mobile Shelter Systems USA, Inc. v. Grate Pallet Solutions, LLC*, 845 F. Supp. 1241 (M.D. Fla. 2012) (Dalton, J.) (holding that the exclusion of testimony of the manufacturer's expert was warranted). Compliance with the requirements of the rule governing disclosure of expert witness opinions is not merely aspirational. *Id.* at 1248. Here, plaintiffs had no notice during Major London's deposition that the City intended to offer expert opinions. As a consequence, plaintiffs had no opportunity to test the reliability of. and bases for, those opinions.

Federal Rule of Civil Procedure 37(c)(1) provides that "[i]f a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." *See Walter International Productions, Inc. v. Salinas*, 650 F.3d 1402 (11th Cir. 2011) (affirming district court's ruling excluding testimony of six expert witnesses because counsel failed to comply with the disclosure rule and failure was not substantially justified or harmless). This Rule is not equivocal. Indeed, the Rule's language indicates it is self-effectuating and automatic. *Bonin v. Chadron Cnty. Hosp.*, 163 F.R.D. 565, 569

(D. Neb. 1995) (noting that Rule 37(c) imposes "an 'automatic' preclusion order for a failure to provide adequate expert disclosures). Applied here, London's expert opinions must be excluded from consideration on summary judgment, including the opinions stated in Paragraphs 49 and 51 of the Statement of Material Facts (DE109, ¶¶ 49, 51).

## B. Motion to Strike Accreditation Argument

The City further intimates in vague terms that "Accreditation review includes not only the content of the policies, but audits of their practical application by the FLPD." (DE109, ¶ 51). They then argue that "no evidence exists . . . that the audited results by an independent reviewing agency were so erroneous." (DE110:26). However, on August 3, 2021, Plaintiffs requested the production of documents regarding any City of Fort Lauderdale Police Department accreditations from January 2010 to Present (DE121-22, City Resp. Req. Prod. No. 26). The City's production included no certificate of accreditation by any agency, much less any accreditation report approving its unwritten practices (*Id*.). The City motion attaches no "audited results" approving the challenged custom and practices, and the failure in discovery to produce such evidence must foreclose this summary judgment claim.

## II. A reasonable juror could find that the City of Fort Lauderdale's IA practices were a moving force behind the violation of the Purcell Brothers' constitutional rights.

Municipal liability under 42 U.S.C. § 1983 results "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell v. Dep't. of Social Services of the City of New York*, 436 U.S. 658 (1978). A municipality's unconstitutional "custom" or "policy," as required to hold it liable for constitutional violations under Section 1983, can take one of three forms: (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a 'custom or usage' with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority. *Brokaw v. Mercer County*, 235 F.3d 1000 (7th Cir. 2000).

"To prove § 1983 liability against a municipality based on custom, a plaintiff must establish a widespread practice that, 'although not authorized by written law or express municipal policy, is

'so permanent and well settled as to constitute a 'custom or usage' with the force of law.'" *Brown v. City of Ft. Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991) (quoting *St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)). "[A] long-standing and widespread practice is deemed authorized by the policy-making officials because they must have known about it but failed to stop it." *Id*.

The City contends on summary judgment that "no evidence exists that the approved and accredited policies were faulty, or that the audited results by an independent reviewing agency were so erroneous such that it may be concluded, on statistics alone, that FLPD condones and ratifies the use of excessive force." (DE110:26). The argument is directed to its express and official policies that require the full investigation of each citizen complaint. This is not disputed, as Plaintiffs agree that the City Code, FLPD policies, and IA SOP, which the City submits was approved by the accreditation board (DE109 at ¶ 56), require the full investigation of every citizen complaint of excessive force, unnecessary force, and false arrest (DE108-21, IA SOP at B.1).

Plaintiffs' *Monell* claim arises because of the City, as a matter of policy, procedure, and practice, does not and has not investigated citizen complaints of excessive force and unnecessary force as required by its written policies.

The City Code, FLPD policies, and IA SOP, which the City has claimed were approved by the accreditation board (DE109 at ¶ 51), require the full investigation of every citizen complaint of excessive force, unnecessary force, and false arrest (DE108-21, SOP for Office of Internal Affairs § F). A basic requirement of the investigative process is that sworn statements of ***all*** civilian witnesses and the accused officer be secured (*Id*. at § G.3,5). Once the investigation is completed, a finding of sustained, not sustained, unfounded, policy failure or exonerated is made (*Id*. at § G.8.a).

That finding is then reviewed by four others: the Assistant Chief, the Chief of Police, the civilian Citizen Police Review Board, and the City Manager (DE121-7, London Dep. 56:15-57:20; 22:7-13). Of note, the Citizen Police Review Board determines the correctness of the investigative finding as well as the sufficiency of factual evidence to render a decision (*Id*. at 22:7-13, § §2-249, 2-250 Code of Municipal Ordinances for the City of Fort Lauderdale). This is the procedure the City's IA website claims it is following (DE121-21 at 2). And it is the default procedure mandated by the SOP governing (DE108-21, SOP for Office of Internal Affairs § F; DE121-7, London Dep.

99:13-100:16).

As a matter of policy, procedure, and practice, the City has repeatedly failed to properly investigate the persistent number of citizen complaints of excessive and unnecessary force. This fact is established in three ways. First, it is a conclusive fact that the City's failure to investigate Raymond Purcell's verified complaint of excessive force by Steven Pohorence was not in conformance with the City's policies, procedures, and practices. Furthermore, the statistics confirm a repeated failure by the City to properly investigate the numerous citizen complaints of excessive and unnecessary force. Third, a review of select cases additionally confirms the City's repeated failure to investigate and discipline its officers for excessive force.

### A.   Evidence of persistent failure to investigate citizen complaints of excessive force and discipline officers for excessive force.

#### 1.   The Purcell Investigation.

Raymond Purcell filed an IA complaint and gave a statement on April 23, 2019, alleging excessive force, false statement, and false arrest by Paul and Pohorence (DE108-6, Purcell IA Compl.). He provided witness names and times of availability to speak with IA (*Id.* at 83-84). IA did not use the formal case file format (DE121-2, Note to File 19-043). IA did not take sworn statements of all civilian witnesses or take compelled statements of the accused officers (DE121-9, Dupree Dep. 26:2-3, 27:3-7). The complaint allegations were never adjudicated as being sustained, not sustained, unfounded, policy failure or exonerated." (DE121-2, Note to File 19-043; DE121-9, Dupree Dep. 45:14-17, 46:23-47:19). The City Manager and Citizens Police Review Board did not review the IA investigation and confirm its finding (DE121-2, Note to File 19-043).

The City ignored the most crucial claims, even though IA was aware of the discrepancies and inconsistencies in the officers' probable cause affidavit and incident report. Nor does the Note to File state that the one of the three exceptions applied (DE121-9, Dupree Dep. 16:20-17:5, 50:7-52:10, 53:7-21, 54:13-20). Departing from its SOP, IA closed the complaint on grounds that there were no apparent policy violations (*Id*. at 51:11-14; DE121-2, Note to File 19-043 at 7). As a consequence, Paul and Pohorence were neither investigated nor disciplined.

The City contends in its motion that any insufficiency in the investigation of Raymond Purcell's internal affairs complaint is of no consequence, because "after-the-fact inadequate

investigation could not have been the legal cause of the Plaintiffs' alleged injuries." (DE110:26-27). The City is wrong for two reasons. First, under *Salvato v. Miley*, 790 F.3d 1286, 1297 (11th Cir. 2015), post-event evidence is relevant to prove the existence of a policy or custom. Second, the City overlooks its admission in discovery that its treatment of citizen complaints regarding Officer Pohorence during the time period of August 24, 2015 to May 17, 2020, was in conformance with City policies, procedures, and practices (DE121-1, City's Resp. Req. Admis. No. 4). Federal Rule of Civil Procedure 36(a) provides that "[a] party may serve on another party a written request to admit, for purposes of the pending action only, the truth of any matters . . . relating to: (A) facts, the application of law to fact, or opinions about either; and (B) the genuineness of any described documents." Fed. R. Civ. P. 36(a)(1). "A matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended." Fed. R. Civ. P. 36(b). To date, the City has not filed a motion to withdraw or amend its Admissions, even after two attempts at filing for summary judgment. Eleventh Circuit law is clear that if a party does not seek to "withdraw or amend its admission, the court [is] not free to reject this "conclusively established' fact even if it 'found more credible the evidence of the party against whom the admissions operate.'" *Williams v. City of Dothan*, 818 F.2d 755, 762 (11th Cir. 1987) (alteration adopted; citation omitted); *see also Metzler v. Lykes Pasco, Inc.*, 972 F. Supp. 1438, 1443 (S.D. Fla. 1997) ("An admission that is not withdrawn or amended cannot be rebutted by contrary testimony or ignored by a district court."); *Oliver v. Baity*, 208 F. Supp. 3d 681, 687 n.1 (M.D.N.C. 2016) (finding matters addressed in the Requests for Admissions deemed admitted).

Applied here, the City's corporate representative admitted during discovery that it did not investigate allegations of excessive force by Pohorence (DE121-9, Dupree Dep. 113:6-16, 119:4-11; DE121-2, Note to File 19-043, at 1-7). Because of its admission, it is a conclusive fact that the City had a policy, practice, and procedures of failing to investigate citizen complaints of excessive force and therefore does not discipline officers who engage in excessive force. Such a practice would be a moving force behind excessive force.

### 2. *The Statistics confirm the City's repeated failure to investigate excessive force complaints.*

Plaintiffs do not ask the Court to rely solely on the City's admissions, even though it can

under Rule 36(b). Plaintiffs have also presented FLPD statistics that confirm and corroborate the City's repeated failure to properly investigate citizen complaints of excessive force.

IA's standard operating procedure is to use the formal case file format, unless one of three exceptions applies (DE108-21, SOP for Office of Internal Affairs § F; DE121-7, London Dep. 99:13-100:16). However, since 2007, IA has used the formal case file format for **less than 13%** of complaints for excessive and unnecessary force (DE121-19, IA Pro Spreadsheet Amalgamated Data). Stated differently, less than 13% of citizen complaints resulted in formal charges that were investigated and given a finding of sustained, not sustained, unfounded, or exonerated, which were then reviewed by the Assistant Chief, the Chief of Police, the civilian Citizen Police Review Board, and the City Manager (DE121-19, IA Pro Spreadsheet Amalgamated Data). For the two-year period before the Purcell arrest, from May of 2015 to April of 2017, **zero allegations** of unnecessary or excessive force were sustained by IA (DE121-7, London Dep. 136:25-137:7).

The City has exploited a narrow exception in its SOP that allows a case to be closed as Note to File without formal charges and an investigation. The SOP contains three common-sense exceptions that obviate the need to pursue the formal case file format: 1) an anonymous complaint that cannot be investigated; 2) a complainant who withdraws his or her complaint; or 3) an instance where sufficient information with corroborating documentation exists to dispute the validity of the complaint. (DE121-7, London Dep. 99:13-100:16; DE108-21, SOP for Office of Internal Affairs § Section F). If one of the three exceptions apply, then IA may close the case as a Note to File. Contrary to the SOP, Note to Files are the **rule**, not the exception, with the City closing a whopping 88.7% use of force complaints without formal charges and a formal investigation (DE121-19, IA Pro Spreadsheet Amalgamated Data).

Even worse, further review of the 220 individual cases closed without formal investigation as Note to Files reveals that 173 (78.6%) of the Note to Files were closed based on a finding of **"no apparent violation."** (DE121-19, IA Pro Spreadsheet Amalgamated Data; DE121-7, London Dep. 44:16-45:4). This should not be, because there is no SOP or policy providing for such a disposition (DE121-7, London Dep. 97:20-24, 99:5-12). The City admitted in deposition that the term is not defined in any written documentation (DE121-7, London Dep. 101:16-19). Section F of the IA SOP, which defines the three limited circumstances in which an IA complaint can be

closed as a Note to File, does not contain a "No Apparent Violation" exception (DE108-21, SOP for Office of Internal Affairs § Section F).

Significantly, Raymond Purcell's complaint is one of the 188 Note to Files that were closed using the City's no apparent policy violation custom, even though he presented IA with bona fide policy violations. The statistical data leaves no doubt that the Purcell complaint is part of a larger practice of improperly investigating citizen complaints.

### 3.     *Select Cases Corroborating Admission and Statistical Data.*

Finally, Plaintiffs' summary judgment evidence confirms the admissions and FLPD statistics of a repeated failure to investigate. The City's admission mooted the need for individual review of each IA file to establish the existence of a City-wide custom or practice of insufficiently reviewing responses to resistance and insufficiently investigating citizen complaints of excessive force, false arrest, and false statements. Yet, a select review confirms the City's policy and practice. Raymond Trufant, Corey McCabe, Rafael Reme, Rodney Howard, and Ivan Kilpatrick all presented apparent violations of City policies and procedures that were ignored by IA (PRSMF ¶¶ 101-19). Many of their criminal cases ended with jury acquittals or State Attorney dismissals (PRSMF ¶¶ 107, 109-111, 117). In investigating their bona fide citizen complaints, the City ignored its SOPs, employing its unwritten practice of closing cases as Note to Files on grounds of no apparent policy violation and failed to discipline the officers (PRSMF ¶ 119).

The departure from its written policies and procedures is not trivial. The disposition has allowed FLPD officers for more than a decade to escape formal charges and investigations into bona fide claims of misconduct. Even more, it has removed City oversight (i.e. the City Manager and Citizen Police Review Board) from the IA process.

### B.     Evidence that the City has repeatedly failed to review use of force reports, as required by its written policies and procedures.

FLPD Policy 119, Section 3.E, requires that IA review all reported uses of force and "determine whether or not [the use of force] is consistent with Department policies and professional law enforcement standards" (DE121-5, FLPD Policy 119.3; DE121-7, London Dep. 63:18-64:24). The response to resistance policy and procedure was created to provide officers with guidance for how they should adhere and conduct themselves in situations when they are

responding to resistance (DE121-7, London Dep. 148:13-17). A purpose of the use of force review policy is to monitor law enforcement's use of force against civilians (DE121-7, London Dep. 149:3-6). When officers know they are being monitored, they comply. For example, when the Department instituted body-worn cameras, there was a 40 percent increase from 2018 to 2019 in the number of times officers reported drawing firearms on suspects (DE121-7, London Dep. 131:25-132:13).

The evidence establishes that the City has persistently failed to review its officers' use of force, as required by its SOP. This fact is established in three ways. First, IA inaccurately and incompletely reported the use of force against Randall and Raymond and failed to fully review the use of force. The City admitted that its review of Pohorence's use of force reports were in conformance withs its policies, procedures, and practice. Second, Department statistics confirm a repeated failure by the City to review use of force reports, as required by its policies and procedures. Third, a review of select cases confirms the City's repeated failure to investigate and discipline its officers for excessive force.

### 1. *Review of Pohorence and Paul's use of force reports*

Randall received injuries requiring stitches at a hospital (DE108-10, Randall Dep. 40:22-24). The IA Pro Incident summary does not address Randall's injuries or that he was hospitalized (DE121-26, Pohorence IA Pro Summary at 4). FLPD policy does not provide for a determination of whether or not there is an apparent policy violation of department policies and professional law enforcement standards (DE121-7, London Dep. 148:3-9).  The IA Pro Incident Summary simply finds: "Upon review of the Incident/Investigation report and related documents, there is no apparent violation of Department policy." (DE121-26, Pohorence IA Pro Summary at 4 at 4). IA is required to determine if the force was consistent or inconsistent with Department policies; IA did not (DE121-26, Pohorence IA Pro Summary at 4).

Furthermore, photographs should have been taken for review by IA, given Randall and Raymond's physical injuries. (DE121-7, London Dep. 64:24-65:4, 83:18-22). No pictures are in the IA file (DE121-2, Note to File 19-043). Nor does the Incident Summary reference the absence of photographs of Randall's and Raymond's injuries.

The manner in which Pohorence's use of force against Raymond and Randall was reviewed

is not isolated. In discovery, the City admitted its review of Pohorence's use of force reports during the time period of August 24, 2015, to May 17, 2020, was in conformance with its practices (DE121-1, City's Resp. Req. Admis. Nos. 1-3). It is therefore a conclusive fact that the City, as a matter of practice, does not review responses to resistance as outlined in its written policies and procedures.

### 2.     The Statistics confirm the City's repeated failure to properly review response to resistance.

FLPD statistics confirm the City's admission about its repeated failure to review responses to resistance, as required by its SOP. IA only decides if there is an apparent policy violation. Applying this unauthorized practice, from 2008 to Present, the City has found no apparent policy violations in more than 99 percent of its reviews (DE121-19, IA Pro Spreadsheet Amalgamated Data Tab B).

The departure is not insignificant. In 2015, of the 853 uses of force reviewed, zero of them were found to be inconsistent with department policies (DE121-7, London Dep. 127:8-128:6). For 2016 and 2017, the annual report of response to resistance review found no use of force inconsistent with the departmental policy (DE121-7, London Dep. 129:14-130:23). For 2019, of the 1,541 reported uses of force, only one use of force did not comply with departmental policy (DE121-7, London Dep. 131:16-24). For 2020, of the 1,331 responses to resistance reviewed, only one was determined to be inconsistent with department policies and procedures (DE121-7, London Dep. 133:22-134:5).

### 3.     Select Cases Corroborate the City Admission and Statistics

Select review of Response to Resistance incident summaries confirm the City's failure to properly review responses to resistance. For example, Paul used force against a child who nonviolently resisted his unlawful attempt at handcuffing her (PRSMF ¶¶ 131-34). He then employed a leg sweep in response to her lawful resistance (DE121-11, UOF Compilation at 3).

Pohorence used excessive force by drawing his firearm and then handcuffing an individual Pohorence saw in what he "thought" was an abandoned building (*Id*. at 6).

Paul responded to a report of a man with a knife (*Id*. at 47). There was no report that the homeless man threatened anyone or pointed the knife at anyone. By the time Paul arrived, the man

was sleeping on the ground with no knife in his hand. Yet, Paul drew his weapon and detained the individual. No knife was on the person at the time of the detention.

Officer Campbell responded to a call for service that a white male was pointing a gun at a black male subject (*Id*. at 27). Upon arrival, Officer Campbell, without probable cause or reasonable suspicion, detained the alleged victim at gunpoint along with the white male who was pointing the gun. Specifically, Officer Campbell directed the victim to lay prone on the ground as he pointed a loaded firearm at him (*Id*. at 27).

Pohorence, while leaving a call regarding a civil matter, drew his firearm on a man with a hammer in his hand (*Id*. 50). Pohorence has also drawn his firearm on a mother and her two children after receiving an outdated License Plate Reader notification of a tag reported stolen, a misdemeanor offense (DE121-28, Shanee Nicole McReal Aff. ¶ 4, 8, 27). The vehicle was the same make, model, year, and color as the vehicle the license plate was registered to, so there was no probable cause of felony theft (*Id*.). By loudspeaker, she was ordered out of her car (*Id*. ¶¶ 7-10). Even though she complied with all commands, the officers continued pointing their firearms at her, with her children in the direct line of fire (*Id*. ¶ 14). The officers detained her as her two children were crying inside the vehicle (DE121-11, UOF Compilation at 78; DE121-23, Body Camera Case 34-2003-047130 TS: 18:45:40-18:46:15).

For each of these reported uses of force, IA found no apparent violation, even though the reports showed apparent policy violations (PRSMF ¶¶ 134, 137, 141-42, 146, 149).

### C.    A reasonable juror could find that the policies were a moving force behind the excessive force against Randall and Raymond.

The City contends in passing that "no evidence exists that the multiple layers of review in place, and policies applicable to the Office of Internal Affairs (both as written and applied) were so insufficient as to **move officers** to violate rights of citizens with impunity." (DE110:26) (emphasis added). Again, the issue is not the City's written policies. The issue is its custom and practice of ignoring its official practices in a way that has allowed officers to avoid investigation and discipline for bona-fide claims of police excessive force. **Notably, the City does not contend that its unofficial policies and practices—which it admitted existed during discovery depositions and admissions—were not a moving force.**

By official custom and practice, the City does not utilize the multiple layers of review set out in the City Code, FLPD Policies and SOP. It closes cases as Note to Files, based on a finding of no apparent policy violation. This departure is not insignificant. For more than a decade, the disposition has allowed FLPD officers to escape formal charges and investigations of bona fide claims of misconduct. Even more, it has removed City oversight (i.e. the City Manager and Citizen Police Review Board) from the IA process. Its failure to fully review responses to resistance has allowed excessive and unlawful force to go unchecked and undisciplined.

*Fundiller v. City of Cooper City*, 777 F.2d 1436, 1443 (11th Cir. 1985), is the seminal case establishing that "a persistent failure to take disciplinary action against officers can give rise to the inference that a municipality has ratified conduct" for purposes of Section 1983 municipal liability. The Court explained that such facts "establish[] an unconstitutional custom." *Thomas v. Roberts*, 261 F.3d 1160, 1174 n.12 (11th Cir. 2001) (quoting *Fundiller*, 777 F.2d 1443). *See also Salvato v. Miley*, 790 F.3d 1286, 1296 (11th Cir. 2015) (affirming the correctness of *Fundiller*). Indeed, the "continued failure of the city to prevent known constitutional violations by its police force is precisely the type of informal policy or custom that is actionable under section 1983." *Depew v. City of St. Marys*, 787 F.2d 1496, 1499 (11th Cir. 1986). Evidence of a custom of allowing excessive force "provide[s] the causal link between the challenged conduct and the City's policy, because [the officers] would have been acting in accordance with the policy of allowing or encouraging excessive force." *Fundiller*, 777 F.2d at 1443.

"[I]f, as Plaintiff argues, the City failed to conduct adequate investigations into excessive force complaints, then a heightened inclination of police officers to use excessive force would be a "highly predictable consequence' of the City's inaction." *Monaco v. City of Camden*, 2008 U.S. Dist. LEXIS 30825, at *34 (D.N.J. Apr. 14, 2008). Likewise, "[w]ere a jury to credit plaintiff's proofs that the City inadequately investigated its officers' alleged use of excessive force and other constitutional violations and failed to properly supervise or discipline its officers, a reasonable fact-finder could, in turn, conclude that the City's action, or lack thereof, constituted deliberate indifference and proximately caused plaintiff's injuries." *Merman v. City of Camden*, 824 F. Supp. 2d 581, 593-94 (D.N.J. 2010). *Bordanaro v. McLeod*, 871 F.2d 1151, 1162-63 (1st Cir. 1989) ("The absence of a strictly enforced disciplinary system led the officers at the King Arthur Motel

to believe they were above the law and would not be sanctioned for their misconduct. A sufficiently supervised, properly recruited, trained and disciplined group of officers would not have acted so far below the level of accepted police behavior. Based on all the foregoing, we affirm both the jury's finding that the plaintiffs' injuries were caused by a policy of the City of Everett and its imposition of § 1983 liability on the city.").

On this record, a reasonable jury could conclude that the Department's Note to File practice fostered an environment where FLPD officers could use excessive force, give false statements and make false arrests, with impunity. Since 2007, only 1.79% of use of force complaints have ended with a determination sustaining the alleged force violation (DE121-19, IA Pro Spreadsheet Amalgamated Data). By contrast, of the few complaints investigated and therefore subjected to review by the City Manager and Citizen Police Review Board, 20% ended with a determination sustaining the alleged violation (*Id.*).[5]




By employing a shadow complaint process, the FLPD has shielded its officers from the majority of complaints of excessive force. In *Sanchez v. Gomez*, EP-17-CV-133-PRM, 2020 WL 1036046, at *32 (W.D. Tex. Mar. 3, 2020), a district court concluded "a reasonable jury could look at the evidence and determine that [the] Chief['s] failure to discipline communicated to the [officers] that these actions were not punishable, let alone unconstitutional." In so finding, the

---

[5] These charts were created using the Analyze Data button on the Home tab in Excel for Microsoft.

district court reasoned: "[I]t is not hard to imagine that Defendant Officers Gomez and Rivera may have used force because Chief Allen failed to reinforce the right behavior through discipline. Therefore, EPPD officers were 'emboldened' to act at least to the extent that they may have believed their use of force was acceptable."

Likewise, in *Ramirez v. Escajeda*, EP-17-CV-00193-DCG, 2021 WL 3713064, at *49 (W.D. Tex. Aug. 20, 2021), the district court denied summary judgment after finding it obvious that police would use excessive force if not properly supervised and investigated. The court explained: "After considering the evidence in the light most favorable to Plaintiffs, the Court concludes that a reasonable jury could conclude that an ***obvious*** consequence of failing to investigate or discipline officers accused of using excessive force would be additional constitutional violations involving excessive force." *Id*. (emphasis added).

Defendant City conceded these very points in deposition. The City admitted it knew of the need for oversight of its officers with respect to how they used force in response to resistance (DE121-7, London Dep. 149:6-9). The City further agreed that if law enforcement officers are not supervised, and their use of force subject to administrative review, it is possible that officers will use force indiscriminately (*Id*.149:11-150:6). There is sufficient evidence allowing a jury to conclude that the failure to implement its investigation SOPs was a moving force behind the injury.

### III.    The City is not entitled to sovereign immunity as a matter of law.

It is well-settled in the Southern District of Florida that "the 'nature of Florida Statutes § 768.28 tends to require a plaintiff to plead alternative and inconsistent claims against a government entity and its employees.'" *Valdes v. Miami-Dade Cty.*, No. 12-22426-CIV, 2013 U.S. Dist. LEXIS 139335, 2013 WL 5429938 at *18 (S.D. Fla. Sept. 27, 2013) (quoting *Petithomme v. Cty. of Miami-Dade*, No. 11-20525-CIV, 2011 U.S. Dist. LEXIS 98152, 2011 WL 3648622, *3 n.2 (S.D. Fla. Aug. 16, 2011). "In fact, Section 768.28(9)(a) 'tends to cause plaintiffs to bring 'mutually exclusive' claims in the alternative against a government and its employees because the state is immune from acts committed with bad faith or malice, while employees must have acted with bad faith or malice to be held personally liable." *Garayoa v. Reina*, No. 16-20213-Civ-COOKE/TORRES, 2016 U.S. Dist. LEXIS 78518, at *7 (S.D. Fla. June 16, 2016) (quoting *Reyes v. City of Miami Beach*, No. 07-22680-CIV, 2007 U.S. Dist. LEXIS 86475, 2007 WL 4199606,

*3 (S.D. Fla. Nov. 26, 2007)).

This complaint is no exception. Counts V and IX allege that Raymond Purcell was falsely imprisoned, but in the alternative (DE1-1, Comp. ¶¶ 126-32, 171-75). Count V is against the officers and Count IX is against the City. Counts IV and VIII similarly allege, in the alternative, assault and battery (DE1-1, Compl. ¶¶ 119-25, 161-68). If the jury finds the officers did not act in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property, then the City is personally liable as alleged in Counts VIII and IX. *See* § 768.28(9)(a). However, if the jury comes to the opposite conclusion, then Paul and Pohorence are personally liable as alleged in Counts IV and V. *See* § 768.28(9)(a), Fla. Stats.

There are genuine issues of material fact foreclosing summary judgment on the question of who is ultimately liable for plaintiffs' damages. The City cites Plaintiffs' testimony that they believe the officers acted in *bad faith* and *with malicious intent.* (DE109, ¶ 47). But Officer Paul, when asked the same question, denied acting in bad faith or with malicious purpose (DE108-12, Paul Dep. 158:16-24). This genuine conflict prohibits summary judgment on sovereign immunity.

Moreover, the City has waived its sovereign immunity defense by failing to raise it in its answer and affirmative defenses. *Proctor v. Fluor Enters.*, 494 F.3d 1337, 1350 (11th Cir. 2007) ("In general, a party's failure to raise an affirmative defense in the pleadings results in a waiver of the defense"). The City cannot raise the issue for the first time on summary judgement after discovery is closed. "Failure to plead an affirmative defense generally results in a waiver of that defense." *Pensacola Motor Sales Inc. v. E. Shore Toyota, LLC*, 684 F.3d 1211, 1221-22 (11th Cir. 2012).

**IV.    Summary judgment is not due on Randall Purcell's false arrest claim as to the time from his arrest until discovery of the arrest warrant.**

Randall Purcell incorporates his response to the Paul and Pohorence's argument on this issue. *See* Response to Paul and Pohorence Summary Judgment Motion, Section V.

**CONCLUSION**

For these reasons, Defendants' Summary Judgment Motion must be denied.

Respectfully submitted,

*S/ Benedict P. Kuehne*
**BENEDICT P. KUEHNE**
Florida Bar No. 233293
**MICHAEL T. DAVIS**
Florida Bar No. 63374
**JOHAN D. DOS SANTOS**
Florida bar No. 1025373
**KUEHNE DAVIS LAW, P.A.**
100 S.E. 2nd St., Suite 3105
Miami, FL 33131-2154
Tel: 305.789.5989
Fax: 305.789.5987
ben.kuehne@kuehnelaw.com
efiling@kuehnelaw.com

## CERTIFICATE OF SERVICE

I CERTIFY on November 22, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify the foregoing document is being served this day on all counsel of record either via transmission of Notices of Electronic Filing generated by CM/ECF or in another authorized manner for those counsel or parties not authorized to receive electronically Notices of Electronic Filing.

By:    *S/ Michael T. Davis*
       **MICHAEL T. DAVIS**

# Appendix

### Star Trek Memorabilia





31

**Picture of Garage and Randall's Injuries**

