UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-cv-61006-ALTMAN/Hunt

**RANDALL PURCELL**, *et al.*,

    *Plaintiffs*,

v.

**CITY OF FORT LAUDERDALE**, *et al.*,

    *Defendants*.
_____/

## ORDER

Our Plaintiffs, Raymond and Randall Purcell, brought a ten-count Complaint against the Defendants after "two City of Fort Lauderdale police officers . . . detained, arrested, and deployed force against [them]" on April 6, 2017. *Purcell v. City of Ft. Lauderdale*, 753 F. Supp. 3d 1308, 1317 (S.D. Fla. 2024) (Altman, J.); *see also generally* Complaint [ECF No. 1-1]. After the parties moved for summary judgment on the first nine counts of the Complaint, we granted summary judgment in favor of the City of Fort Lauderdale on Count VII and denied summary judgment in all other respects. *See Purcell*, 753 F. Supp. 3d at 1354. At the time, we noted the "conspicuous[ ]" omission of "any discussion—even in passing—of Count X." *Id.* at 1326 n.8. This count "alleges that, 'as a direct and proximate result of the City of Fort Lauderdale's negligent supervision, retention, and training of defendants Pohorence and Paul, plaintiffs were subjected to injury, including deprivations of their civil rights and state law rights.'" May 27, 2025, Order to Show Cause [ECF No. 197] at 1 (cleaned up) (quoting Complaint ¶ 180).

While the parties may have been silent on Count X during their summary-judgment briefing, this count has dominated pretrial discourse. *See generally* May 13, 2025, Paperless Minute Entry [ECF

No. 195]. Because of this renewed focus on Count X, we *sua sponte* issued the following warning to the parties:

> "Under Federal Rule of Civil Procedure 56(f), 'district courts unquestionably possess the power to trigger summary judgment on their own initiative.'" *Great Lakes Ins. SE v. Crabtree*, 673 F. Supp. 3d 1301, 1306 (S.D. Fla. 2023) (Altman, J.) (quoting *Massey v. Cong. Life Ins. Co.*, 116 F.3d 1414, 1417 (11th Cir. 1997)). To trigger summary judgment *sua sponte*, though, we must give the parties "notice and a reasonable time to respond[.]" FED. R. CIV. P. 56(f). We do so here. . . .
>
> What evidence the parties "believe is admissible at trial as to Count X" remains a live issue. May 14, 2025, Order [ECF No. 196] at 1. After a careful review of the record, however, we doubt that the Plaintiffs can maintain this cause of action against the City. . . . [W]e're not sure that the Plaintiffs can, as a matter of law, maintain either a negligent training or a negligent supervision count against the City.

May 27, 2025, Order to Show Cause at 1–2. After reviewing the relevant case law, we explained to the parties our view that: (1) the Plaintiffs could not state a negligent-supervision claim because "the police officers in our case 'were acting in the scope and furtherance of their employment'"; and (2) the Plaintiffs also couldn't state a negligent-training claim since "municipalities are immune from state-law suits alleging that they negligently trained their police officers." *Id.* at 2–3 (quoting Complaint ¶ 173).

Notwithstanding our initial view of the law, we ordered the parties to file briefs explaining "[w]hether the Plaintiffs can assert a claim of negligent supervision and/or negligent training against the City[.]" *Id.* at 4. The parties have now filed their briefs. *See* City's Memorandum on Proper Scope of Evidence in Negligent Employment Claims Cases ("City's Br.") [ECF No. 198]; Plaintiffs' Response to Show Cause Order ("Plaintiffs' Br.") [ECF No. 199]. After reviewing these briefs and the governing law, we now reaffirm our initial suspicion: The Plaintiffs cannot maintain a negligent-training or negligent-supervision cause of action against the City. We'll thus **GRANT** summary judgment in favor of the City as to Count X of the Complaint.

We'll start with the more straightforward of the two theories, negligent training. "Under Florida law, an employer is liable in tort for reasonably foreseeable damages resulting from the

2

negligent training of its employees and agents." *Lewis v. City of St. Petersburg*, 260 F.3d 1260, 1265 (11th Cir. 2001). As with any negligence-based claim under Florida law, "a plaintiff must allege a duty of care owed by the defendant to the plaintiff, a breach of that duty of care, and resulting damages." *Mosby v. Harrell*, 909 So. 2d 323, 327 (Fla. 1st DCA 2005); *see also Adler v. WestJet Airlines, Ltd.*, 31 F. Supp. 3d 1381, 1388 (S.D. Fla. 2014) (Cohn, J.) ("A plaintiff asserting a negligent training claim must allege that it was harmed as a result of an employer's failure to adequately train an employee, and that the nature of the employment put the plaintiff in a 'zone of risk' such that the employer had a duty running to the plaintiff.").

But things are a little different if a plaintiff wants to sue the State of Florida "or its agencies and subdivisions" for negligent training. *Gualtieri v. Bogle*, 343 So. 3d 1267, 1274 (Fla. 2d DCA 2022). That's because the State has waived sovereign immunity "under circumstances in which the state or agency or subdivision, if a private person, would be liable to the claimant, in accordance with the general laws of the state." *Mosby*, 909 So. 2d at 326 (quoting FLA. STAT. § 768.28(1)); *see also Henderson v. Bowen*, 737 So. 2d 532, 534–35 (Fla. 1999) ("The State of Florida has waived sovereign immunity in tort actions for any act for which a private person under similar circumstances would be held liable."). But there's an exception to this broad waiver of sovereign immunity (known as the "discretionary function exception"). "Under the discretionary function exception, 'basic judgmental or discretionary governmental functions are immune from legal action, whereas operational acts are not protected by sovereign immunity.'" *Gualtieri*, 343 So. 3d at 1275 (quoting *Pollock v. Fla. Dep't of Highway Patrol*, 882 So. 2d 928, 933 (Fla. 2004)); *see also Lewis*, 260 F.3d at 1262–63 ("Accordingly, even if a plaintiff has adequately alleged all of the elements of a negligence claim, including the breach of a common law duty, immunity would still bar the claim if the challenged act were deemed to be governmentally 'discretionary' in nature, and not merely 'operational.'" (citing *Kaisner v. Kolb*, 543 So. 2d 732, 737 (Fla. 1989))). A function is "discretionary" if it's an "exercise of executive or legislative power" that

concerns "fundamental questions of policy and planning." *Gualtieri*, 343 So. 3d at 1275; *see also Lewis*, 260 F.3d at 1264–65 (same).

In our prior order, we cited the Eleventh Circuit's decision in *Lewis* and the Second DCA's decision in *Gualtieri* and observed that municipalities (like the City) "are immune from state-law suits alleging that they negligently trained their police officers." May 27, 2025, Order to Show Cause at 3. "A city's decision regarding how to train its officers and what subject matter to include in the training is clearly an exercise of government discretion regarding fundamental questions of policy and planning." *Lewis*, 260 F.3d at 1266; *see also Whitaker v. Miami-Dade Cnty.*, 126 F. Supp. 3d 1313, 1330 (S.D. Fla. 2015) (Lenard, J.) ("[U]nder Florida law, the County cannot be liable for failure to train and supervise because training and supervision are 'discretionary functions' for which governmental liability does not attach."). Despite being put on notice of this case law and our inclination to dismiss the negligent-training claim, neither party spent any time in their briefs discussing the application of sovereign immunity *vis-à-vis* negligent-training claims. *See generally* Plaintiffs' Br.; City's Br. They've thus waived any right to contest our prior finding that the City "is absolutely immune from the state-law, negligent-training claim the Plaintiffs have asserted here." May 27, 2025, Order to Show Cause at 3; *see also Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012) ("[T]he failure to make arguments and cite authorities in support of an issue waives it."). Since this Court, the Eleventh Circuit, and Florida's intermediate appellate courts all agree that a municipality can't be sued over "how [they] train [their] deputies and what subject matter to include in said training[,]" the Plaintiffs' negligent-training claims fails as a matter of law. *Gualtieri*, 343 So. 3d at 1276.

Which brings us to the slightly more complicated question of negligent supervision. That tort requires "a plaintiff [to] establish that the employer owed a legal duty to the plaintiff to exercise reasonable care in hiring and retaining safe and competent employees." *Thomas v. Indian River Cnty. Sheriff's Dep't*, 2021 WL 12171820, at *5 (S.D. Fla. Oct. 4, 2021) (Marra, J.); *see also Defilippo v. Curtin*,

4

255 So. 3d 351, 356–57 (Fla. 4th DCA 2018) ("[T]o prevail on [a] negligent supervision theory, a plaintiff must prove the basic elements of negligence: (1) a legal duty; (2) the negligent breach of that duty; and (3) that the negligent breach of that duty proximately caused the injury[.]" (citing *Collins v. Sch. Bd. of Broward Cnty.*, 471 So. 2d 560, 563 (Fla. 4th DCA 2018))). Liability attaches when "the employer knows or should know of an employee's unfitness and fails to take further action such as 'investigating, discharge or reassignment.'" *Malicki v. Doe*, 814 So. 2d 347, 362 n.15 (Fla. 2002) (quoting *Garcia v. Duffy*, 492 So. 2d 435, 438–39 (Fla. 2d DCA 1986)).

In our prior order, we noted that the "City very likely cannot be liable under a negligent-supervision theory for the alleged acts of Officers Pohorence and Paul" because negligent supervision "requires that the actions of the employee be outside the course and scope of the employee's employment." May 27, 2025, Order to Show Cause at 2 (quoting *City of Boynton Beach v. Weiss*, 120 So. 3d 606, 610 (Fla. 4th DCA 2013)). The City urges us not to retreat from this position. *See* City's Br. at 7 ("That negligent employment claims necessarily involve predicate torts committed outside the course and scope of employment is deeply embedded in our jurisprudence, and uniformly recognized by state and federal courts alike.").

But the Plaintiffs advance a two-pronged argument in opposition. *First*, they say that "Florida courts have been divided on whether negligent supervision requires the employee's tortious act fall within or outside the scope of employment" and ask us to focus on "whether the City knew or should have known they were unfit for duty, and failed to take corrective action" without regard to "where the officers' tortious conduct falls along the scope-of-employment spectrum." Plaintiffs' Br. at 2–3. We reject this position. Courts have almost uniformly held that an employer isn't liable for negligent supervision unless "the actions of the employee [are] outside the course and scope of the employee's employment." *Weiss*, 120 So. 3d at 610; *see also Gabor v. Remington Lodging & Hospitality*, __ So. 3d ___, 2025 WL 1534584, at *2 (Fla. 5th DCA May 30, 2025) ("[A] cause of action against an employer for

5

the negligent training or negligent supervision of its employees must be based on the employee's actions having been performed outside the course and scope of employment." (citing *ACTS Ret.-Life Cmtys. Inc. v. Est. of Zimmer*, 206 So. 3d 112, 114–15 (Fla. 4th DCA 2016))); *Strong v. City of Naples*, 2022 WL 14029702, at *3 (M.D. Fla. Oct. 24, 2022) (Dudek, Mag. J.) ("Liability for negligent supervision or retention arises only when the employee acts outside the scope of employment." (citing *Buckler v. Israel*, 680 F. App'x 831, 834 (11th Cir. 2017))); *Frazier v. Israel*, 2018 WL 4599622, at *4 (S.D. Fla. Sept. 25, 2018) (Bloom, J.) ("Likewise, a claim for negligent supervision must also arise from acts occurring outside the scope of employment."). We ourselves have reached this same conclusion *twice*. *See, e.g.*, *Cendan v. Sch. Bd. of Broward Cnty., Fla.*, 628 F. Supp. 3d 1191, 1218 (S.D. Fla. 2022) (Altman, J.) ("The underlying tortious conduct [for a negligent-supervision claim] must have occurred outside the scope of the employee's employment."); *Venisee v. Miami-Dade Cnty.*, 2025 WL 1529683, at *10 (S.D. Fla. May 29, 2025) (Altman, J.) ("There's no dispute that Sergeant Marckioli was acting within the scope of his employment with Miami-Dade County when he shot Venisee, so the County cannot be liable for negligently supervising Sergeant Marckioli at the time of the shooting." (cleaned up)). Given the clear weight of authority supporting our position, we see no reason to deviate from our own prior holdings here.[1]

---

[1] The Plaintiffs rely on two cases for their view that there's a split in authority on this issue: *Watts v. City of Hollywood*, 146 F. Supp. 3d 1254 (S.D. Fla. 2015) (Altonaga, J.), and *K Company Realty LLC v. Pierre*, 376 So. 3d 730 (Fla. 4th DCA 2023). Neither case moves the needle for us. In *K Company*, the Fourth DCA applied a "direct liability" theory of negligent supervision. *See* 376 So. 3d at 735. Since the Plaintiffs aren't suing the Defendants' "supervisor individually," the "direct liability" theory doesn't apply here. *See Jones v. Vasilias*, 359 So. 3d 10, 14 (Fla. 4th DCA 2023) ("A claim of negligent [supervision] . . . against a supervisor individually, as opposed to the corporate employer, does not depend on whether the subordinate employee's actions were outside the scope of employment."); *Gabor*, 2025 WL 1534584, at *3 ("Lastly, we acknowledge that an action can be brought directly against an employee's supervisor for his or her negligent supervision or negligent training of the subordinate employee (i.e., Henderson), even when the subordinate employee's actions were, as here, within the scope of employment. . . . This principle is inapposite in this case because Gabor never sued Remington's acting general manager or the front desk manager in their individual capacity.").
   *Watts* is a different story. In that case, now-Chief Judge Altonaga relied on the Florida Supreme Court's decision in *Mallory v. O'Neil*, 69 So. 2d 313 (Fla. 1954), and held that "[t]he 'course of

*Second*, to the extent we find "that scope of employment is an element" of negligent supervision, the Plaintiffs say that Officers Pohorence and Paul *weren't* acting within the scope of their employment when they committed their tortious acts. Plaintiffs' Br. at 4. The Plaintiffs' position, briefly stated, is that there are "too many disputed facts for us to say with confidence what each Officer's state of mind was on the night of April 6, 2017[,]" so it's impossible to tell whether "the employee's tortious act was committed in furtherance of the employer's interest, or the subjective interest of the actor." *Id.* at 5–6 (quoting *Purcell*, 753 F. Supp. 3d at 1354). We again disagree.

"An employee's conduct is within the scope of his employment, where (1) the conduct is of the kind he was employed to perform, (2) the conduct occurs substantially within the time and space limits authorized or required by the work to be performed, and (3) the conduct is activated at least in part by a purpose to serve the master." *Ibarra v. Ross Dress for Less, Inc.*, 350 So. 3d 465, 467 (Fla. 3d DCA 2022) (quoting *Iglesia Cristiana La Casa Del Senor, Inc. v. L.M.*, 783 So. 2d 353, 356 (Fla. 3d DCA 2001)). If an employee "'steps aside from his employment to accomplish some purpose of his own,' [the] act [is] not within the scope of employment." *Trabulsy v. Publix Super Market, Inc.*, 138 So. 3d 553,

---

employment' element of the negligent supervision claim . . . refers to a particular period of time" and *not* to "a realm or sphere of conduct[.]" *Watts*, 146 F. Supp. 3d at 1262–63. With all due respect to Chief Judge Altonaga, this is an idiosyncratic interpretation of *Mallory* that just isn't shared by Florida's intermediate appellate courts. *See, e.g.*, *Delaurentos v. Peguero*, 47 So. 3d 879, 882 (Fla. 3d DCA 2010) ("Where, as here, a plaintiff alleges and a defendant admits that the alleged torts took place during the course and scope of employment, employer liability can only be pursued on the basis of respondeat superior *and not on the basis that the employer was negligent*." (emphasis added) (citing *Mallory*, 69 So. 2d at 315)); *Watson v. City of Hialeah*, 552 So. 2d 1146, 1148 (Fla. 3d DCA 1989) ("By its very nature, an action for negligent retention involves acts which are *not* within the course and scope of employment and allows recovery even when an employer is not vicariously liable under the doctrine of respondeat superior." (citing *Mallory*, 69 So. 2d at 315)); *see also Strong*, 2022 WL 14029702, at *3 ("[The plaintiff] claims that 'nowhere in the common law elements of negligent supervision or retention is there a requirement that the employee be operating outside of the scope of employment.' But the Florida Supreme Court has said otherwise, endorsing the principle that 'the master is liable for the acts of his servant *outside the scope of his authority*.' The Eleventh Circuit has also interpreted Florida law to require conduct outside the scope of employment." (cleaned up) (first quoting *Mallory*, 69 So. 2d at 315; and then citing *Buckler*, 680 F. App'x at 834)). Since we don't believe *Watts* represents an accurate assessment of Florida law, we decline to follow it.

555 (Fla. 5th DCA 2014) (quoting *City of Miami v. Simpson*, 172 So. 2d 435, 437 (Fla. 1965)). Whether an employee acted within the scope of his employment "is generally a question of fact for the jury." *Ibid.*

The Plaintiffs' argument runs into trouble from the start because their Complaint *admits* that Officers Pohorence and Paul "were acting in the scope of their employment" when they committed the allegedly tortious acts. Complaint ¶ 165. And the undisputed facts in the record support the Plaintiffs' allegation. Officers Pohorence and Paul were only at the Plaintiffs' home, after all, because Raymond Purcell called the police to report that someone had vandalized his vehicles. *See Purcell*, 753 F. Supp. 3d at 1319–20 ("Later that evening, someone . . . keyed Raymond's PT Cruiser convertible, punctured holes in the PT Cruiser's roof, and keyed Raymond's red pickup from the front to the back. Raymond and Jackie called the police to report the vandalism. . . . The Officer Defendants were later dispatched to Raymond's home to investigate the vandalism of the vehicles." (cleaned up)). The alleged tortious acts then occurred in response to *either* Raymond Purcell's threat to shoot the officers *or* Raymond's innocuous attempt to disengage with the officers and go to bed. *See id.* at 1320–21. In other words, the Officers were only at the Purcell residence because they were lawfully responding to a police call and conducting a criminal investigation—i.e., they had no other "purpose of [their] own" to fulfill. *Trabulsy*, 138 So. 3d at 555.

In *McGhee v. Volusia County*, the Florida Supreme Court held that "abuses of lawful power"— as opposed to the "clearly unlawful usurpation of authority the [officer] does not rightly possess"— are within the scope of a police officer's employment. 679 So. 2d 729, 733 (Fla. 1996); *see also Hennagan v. Dep't of Highway Safety & Motor Vehicles*, 467 So. 2d 748, 750 (Fla. 1st DCA 1985) ("[C]onduct may be within the scope of employment, even if it is unauthorized, if it is of the same general nature as that authorized or is incidental to the conduct authorized."); *Strong*, 2022 WL 14029702, at *3 ("Even though Officer Craig may have exceeded his lawful authority, he was performing acts squarely within

8

the scope of his employment."). Officers Pohorence and Paul's alleged battery and false imprisonment against the Plaintiffs occurred when they were at a crime scene actively investigating an act of alleged vandalism; both, therefore, were acting within the scope of their employment when they committed the allegedly tortious acts.

While we agree with the Plaintiffs that a jury *could* find that the Officers' actions were "excessive" and "illegal," *Purcell*, 753 F. Supp. 3d at 1338, we can "attribute the alleged actions of [Officers Pohorence and Paul], at least in part, to misfeasance and/or overzealousness in the performance of [their] official duties." *Hennagan*, 467 So. 2d at 751; *see also Hung Phan v. City of St. Petersburg, Fla.*, 2007 WL 1225380, at *6 (M.D. Fla. Apr. 25, 2007) (Kovachevich, J.) ("[A]n officer who uses excessive force during the course of an arrest is acting while in the scope of his or her employment as a law enforcement officer.").

In its final argument, the Plaintiffs say that we can't dismiss their negligent-supervision claim without violating our own Summary Judgment Order. After all, they contend, we already held that "there are, on this record, too many disputed facts for us to say with confidence what each Officer's state of mind was on the night of April 6, 2017." *Purcell*, 753 F. Supp. 3d at 1354. But this portion of our order was about "whether the [Officers'] acts were malicious or in bad faith." *Id.* at 1351. Whether the Officers acted in bad faith is a *separate question* from the one we address here: i.e., whether they acted outside the course and scope of their employment. *See Ratlieff v. City of Ft. Lauderdale*, 748 F. Supp. 3d 1202, 1272 (S.D. Fla. 2024) (Ruiz, J.) ("Suits may proceed against an employee only if he (i) acted outside the course and scope of his employment, *or* (ii) committed a tort in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." (emphasis added) (citing FLA. STAT. § 768.28(9)(a))); *see also Strong*, 2022 WL 14029702, at *2 (same). And there are indeed disputed material facts about whether Officers Pohorence and Paul acted in bad faith *during the scope of their employment*, but we have never held (or even suggested) that

9

there's some genuine dispute here about whether the Officers took these acts within (as opposed to outside) the course and scope of their employment. *See Simon v. Murphy*, 895 So. 2d 1245, 1246 (Fla. 4th DCA 2005) ("[A]n officer acting in the scope of employment may be held personally liable in tort only where the officer acts in bad faith or with malicious purpose[.]" (cleaned up)). Since there's no genuine dispute that Officers Pohorence and Paul were acting within the course and scope of their employment when they engaged in the allegedly tortious conduct, the Plaintiffs cannot maintain a negligent-supervision claim against the City.[2]

\*   \*   \*

For the foregoing reasons, we hereby **ORDER and ADJUDGE** that summary judgment is **GRANTED** in favor of the City of Fort Lauderdale on Count X of the Plaintiffs' Complaint. Trial in the case shall proceed only on Counts I–VI, VIII, and IX of the Complaint.

**DONE AND ORDERED** in the Southern District of Florida on July 1, 2025.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record

---

[2] The Plaintiffs "respectfully request leave to amend the few paragraphs of the complaint—an amendment that would be the first—to plead alternative allegations of scope of employment." Plaintiffs' Br. at 4. We decline to permit this amendment for three reasons. *First*, for all the reasons we just discussed, the evidence is clear that Officers Pohorence and Paul were, in fact, acting within the scope of their employment—and any attempt to amend the Complaint to suggest otherwise would contradict this undisputed evidence. *Second*, the Plaintiffs haven't shown good cause for their extremely untimely request—which they've made two months before trial and nearly *four years* after the deadline to amend pleadings has passed. *See Doe v. Fenix Int'l, Ltd.*, 2025 WL 336741, at \*10 (S.D. Fla. Jan. 30, 2025) (Altman, J.) ("[W]here (as here) a motion to amend is filed after the scheduling order's deadline, the plaintiff "must first demonstrate good cause under Rule 16(b) before we will consider whether amendment is proper under Rule 15(a)." (cleaned up) (quoting *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998))). *Third*, "a request for leave to file an amended complaint [cannot be] imbedded within an opposition memorandum"; instead, "a plaintiff who wishes to amend his complaint must file a motion seeking leave to do so." *Doe v. Emory Univ.*, 110 F.4th 1254, 1263 n.3 (11th Cir. 2024).

10